**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**RANDOLPH WILKINS,**            **CASE NO. 2:06-cv-00027
JUDGE FROST
     Petitioner,**                **MAGISTRATE JUDGE KEMP**

**v.**

**DEB TIMMERMAN-COOPER, Warden,**

     **Respondent.**

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. Petitioner challenges in this habeas corpus petition, the constitutionality of the revocation of his parole based upon, *inter alia*, allegations of rape. Petitioner asserts in both of his claims presented for federal habeas corpus review that use of video teleconferencing at parole revocation proceedings was constitutionally impermissible. For the reasons that follow, the Magistrate Judge concludes that these claims are without merit and therefore **RECOMMENDS** that this action be **DISMISSED.**

### I. FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On December 31, 1997, while on parole from a 1985 rape conviction, Wilkins was indicted by the Summit County Grand Jury for the rape of Shauneeka Mishauna Wilson. The alleged rape occurred on or about July 25, 1997. Wilson was ten years of age at the time.
>
> Wilkins was returned to the custody of the Ohio Department of

Rehabilitation and Correction ("ODRC") as a parole violator. The case was tried to a jury and, on September 3, 1998, Wilkins was found guilty. Wilkins was sentenced to life in prison and found to be a sexual predator. Wilkins appealed, and on September 29, 1999, the Ninth District Court of Appeals reversed Wilkins's conviction. The Ninth District Court of Appeals found that the trial court erred in admitting testimony concerning Wilkins's 1985 rape conviction. *State v. Wilkins* (1999), 135 Ohio App.3d 26, 732 N.E.2d 1021. The court held that the testimony did not meet the requirements of Evid.R. 404(B) or R.C. 2945.59 and, as such, was inflammatory and prejudicial. *Id.*, 135 Ohio App.3d at 32, 732 N.E.2d 1021. As a result, the case was remanded to the Summit County Court of Common Pleas. On September 15, 2000, the state dismissed the rape charge against Wilkins.

ODRC continued to hold Wilkins as a recommissioned parole violator at the Southern Ohio Correctional Facility ("SOCF"), because he allegedly committed the following violations: (1) he had sexual relations with Wilson who was ten years old at the time of the encounter; (2) he changed his residence without permission of his parole officer; (3) he failed to report to his parole officer; (4) he had contact with a female under the age of 21 without permission of his parole officer; (5) he operated a motor vehicle in which a female was the passenger, without the permission of his parole officer; and (6) he was in the state of Louisiana without the permission of his parole officer.

On October 27, 2000, Wilkins was notified that he was subject to a parole revocation hearing to be conducted via videoconferencing. On November 14, 2000, Wilkins filed a complaint for injunctive relief and motion for temporary restraining order, asserting that under *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, the scheduled revocation hearing by videoconferencing would violate Wilkins's right to confront witnesses under the Fifth and Fourteenth Amendments of the United States Constitution. Appellees filed a memorandum opposing Wilkins's motion for temporary restraining order. Thereafter, the trial court conducted an oral hearing to allow both Wilkins and appellees to present their arguments. At the hearing, the trial court asked:

"THE COURT: Is there any particular reason with this case? I mean why this case? Is there a reason? Is Shauneeka-what was her age, the alleged rape victim, is she going to be a witness, and is she as I remember young, is she 12, 13, something like that?

"MR. HARDWICK: Your Honor, I believe she is 14 according to the birth date in the criminal transcript. She's currently 14.

"MR. ZETS: That's correct, Your Honor. There's no specific reason why this case as opposed to any other case. It was just a determination was made they were going to use it in this case. I don't think they should be denied the ability with it-starting with this case going forward with it or this is one of the first few it's being used.

"The whole idea in the plaintiff's argument is based upon protecting identity of witnesses, that's not an issue in this case. Because we are not talking about not allowing the plaintiff to confront those witnesses, it's the method by which they confront those witnesses. So the fact that the victim in this case will be in Akron, Ohio, by television-granted she is tender age, I believe she has-she might be somewhat mentally deficient or mentally challenged, in that respect I don't think that plays a huge role in determining whether or not they go to Lucasville or people in Lucasville go to Akron. It's just technology the department would like to use under *Morrissey v. Brewer*."

On November 20, 2000, appellees conducted the parole revocation hearing. Wilkins, his counsel, and the hearing officer were present at SOCF. The parole officer and the state's witnesses were present and testified via videoconferencing technology from Akron, Ohio. On December 5, 2000, the trial court denied Wilkins's motion for a temporary restraining order. On December 8, 2000, the Parole Board determined that Wilkins had violated his parole.

On December 15, 2000, Wilkins filed an amended complaint for injunctive relief alleging that the use of the videoconferencing technology during his parole revocation hearing deprived him of the right to confront witnesses under the Fifth and Fourteenth Amendments of the United States Constitution. Appellees responded with a motion to dismiss for failure to state a claim upon which relief can be granted. Civ.R. 12(B)(6). On March 7, 2001, the trial court granted appellees' motion to dismiss, stating that "[t]hrough the use of video-conferencing equipment, plaintiff was able to view and question the witnesses, despite his not being physically present in the same room. Also, the due-process and confrontation rights in a parole-revocation hearing do not rise to the level of those in a trial

3

proceeding."

Wilkins appealed to this court. In *Wilkins v. Wilkinson* (Jan. 15, 2002), Franklin App. No. 01AP-468, 2002 WL 47051, this court reversed, holding that Wilkins had alleged sufficient facts to state a constitutional claim against appellees. Specifically, this court noted that Wilkins alleged that the video camera was positioned in such a way as to prevent him and his counsel from making eye contact with the witnesses, and that the video picture froze on several occasions, thereby preventing Wilkins and the hearing officer from observing the demeanor of the witnesses. These allegations were sufficient to allow Wilkins's claim to survive a Civ.R. 12(B)(6) motion. However, this court did not address whether the use of videoconferencing technology in a parole revocation hearing would satisfy the Confrontation Clause, when the equipment and procedure utilized is functionally equivalent to that accorded live, in-person testimony.

On remand to the trial court, the parties filed cross-motions for summary judgment. The parties attached as exhibits to the motions, among other things, videotapes of the parole revocation proceedings, the Release Violation Hearing Summary prepared by Hearing Officer Trayce Thalheimer, Thalheimer's affidavit, and the deposition transcripts of Chief Hearing Officer Cynthia Mausser and Thalheimer. The Release Violation Hearing Summary provided:

"For the panel[']s information this hearing was held at SOCF where the inmate, HO, public defender and public defender[']s witness were present. The APA, and their witness' [sic] were at the Akron office. This hearing was held via teleconference. This was against the wishes of the PD and a good deal of time was used discussing the objection of the hearing. It was determined in court that the hearing could take place. The PD wanted all parties to be aware that she objected to the way the proceedings were taking place and the fact that the victim would not be present face to face with the subj. in the room during testimony. The decision to hold the hearing this way was agreed to with the APA and the Chief Hearing officer. This was due to the mental and emotional status of the victim."

The trial court granted appellees' motion for summary judgment, finding that: (1) appellees had shown good cause for using the videoconferencing technology; (2) the utilization of videoconferencing technology sufficiently permitted Wilkins and his counsel to observe and confront the witnesses; and (3) in any event,

4

> Wilkins admitted facts establishing most of the alleged parole violations. Wilkins appealed, assigning as error the following:
>
> "FIRST ASSIGNMENT OF ERROR: In violation of Randolph Wilkins['s] right to due process of law, the trial court erred in finding as a matter of law, that Respondents showed good cause for holding the hearing by video conference due to the age and mental condition of one witness and did not require any showing of cause for the other three witnesses who testified by videoconference.
>
> "SECOND ASSIGNMENT OF ERROR: The trial court erred in violation of Mr. Wilkins's right to due process of law by finding that this videoconference was a sufficient approximation of a face-to-face encounter and that Dr. Stephen Acker's report was insufficient to bar summary judgment for Respondents.
>
> "THIRD ASSIGNMENT OF ERROR: In violation of Randolph Wilkins['s] right to due process of law, the trial court erred in finding that Mr. Wilkins's admissions as to non-criminal, technical parole violations obviated any problems with confrontation regarding the rape allegations at his parole revocation hearing."

*Wilkins v. Wilkinson*, 157 Ohio App.3d 209, 210-13 (Ohio App. 10 Dist. 2004), Exhibit 21 to Return of Writ. On May 18, 2004, the state appellate court affirmed the judgment of the trial court. *Id.* Still represented by the Ohio Public Defender, petitioner filed a timely appeal to the Ohio Supreme Court. He raised the following propositions of law:

> 1. The use of videoconferencing at a parole revocation hearing violates a parolee's right to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution and Section 16, Article I of the Ohio Constitution.
>
> 2. Absent a finding of good cause, a parolee must be allowed to confront adverse witnesses in person at a parole revocation hearing. Allowing adverse witnesses to testify via videoconferencing without good cause violates a parolee's right to due process of law under the Fifth and Fourteenth Amendments of the United States and Section 16, Article I of the Ohio Constitution.

5

> 3. Despite any other admissions, a parolee who contests an alleged parole violation is entitled to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution and Section 16, Article I of the Ohio Constitution.

Exhibit 22 to Return of Writ. On October 13, 2004, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. Exhibit 24 to Return of Writ.

On January 11, 2006, represented by the Ohio Public Defender, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The use of videoconferencing at petitioner's parole revocation hearing violated his right to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution.
>
> Petitioner was an Ohio parolee accused of rape. When the local prosecutor did not obtain a conviction for the alleged offense, the Ohio Adult Parole Authority initiated revocation proceedings based upon the rape accusation. The alleged victim and petitioner's parole officer testified in Akron, Ohio, while petitioner, his attorney and the hearing officer watched the proceedings via video conference in Lucasville at the Southern Ohio Correctional Facility. At the conclusion of the hearing, the hearing officer stated that she believed the alleged victim's allegation and revoked petitioner's parole.
>
> 2. The use of videoconferencing, without good cause, at petitioner's parole revocation hearing denied petitioner his right to confront adverse witnesses in violation of the Fifth and Fourteenth Amendments of the United States Constitution.
>
> In addition to the facts stated above, the use of the video conference technology denied petitioner the ability to confront his accuser. This

6

>would have been so even if the video equipment ha[d] worked flawlessly; as it was, the audio was at times distorted and unsychronized with the video and the video alternatively froze and jerked.

It is the position of the respondent that petitioner's claims are without merit. For the reasons that follow, the Magistrate Judge agrees.

## II. MERITS

Petitioner asserts in claims one and two that he was denied due process and his right to confront witnesses by the use of videoconferencing at his parole revocation hearing without an adequate demonstration of good cause. The state appellate court rejected these claims as follows:

>It is well established that a parolee contesting revocation of parole does not have the same confrontation rights as does a trial defendant. *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 16, 577 N.E.2d 352; *Morrissey* at 489, 92 S.Ct. 2593, 33 L.Ed.2d 484. Parole revocation proceedings and trial proceedings are distinct, and a parolee is not entitled to the same level of due process protection as a trial defendant. *See, e.g.*, *Coulverson* at 16, 577 N.E.2d 352 ("The Parole Board may admit hearsay."); *Barnett v. Ohio Adult Parole Auth.* (1998), 81 Ohio St.3d 385, 387, 692 N.E.2d 135 (*per curiam*) ("Parole and probation may be revoked even though criminal charges based on the same facts are dismissed, the defendant is acquitted, or the conviction is overturned, unless all factual support for the revocation is removed."); *State ex rel. Wright v. Ohio Adult Parole Auth.* (1996), 75 Ohio St.3d 82, 661 N.E.2d 728, paragraph two of the syllabus ("Evidence obtained through an unreasonable or unlawful search and seizure is generally admissible in probation and/or parole revocation proceedings."); *see, also*, *Wilson v. State* (1995), 101 Ohio App.3d 487, 491, 655 N.E.2d 1348 (noting that "there is no Eighth Amendment right to bail pending a parole revocation hearing").
>
>Although a parolee contesting revocation does not have the same due process rights as does a trial defendant, the United States Supreme Court has established a minimum due process threshold. In *Morrissey, supra,* the United States Supreme Court held that a

parolee is entitled to the following due process protections at a parole revocation hearing:

"(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body * * *; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id.*, 408 U.S. at 489, 92 S.Ct. 2593, 33 L.Ed.2d 484.

Similarly, Ohio Adm.Code 5120:1-1-18(A)(4)(c) states:

"(4) With respect to the hearing, the releasee has the following rights:

"* * *

"(c) The right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation. In the event that confrontation is disallowed, specific reasons for the same shall be documented in the record of proceedings. Here, we find no error in the trial court's determination that the use of video-conferencing technology sufficiently permitted Wilkins and his counsel to observe and confront the witnesses, despite some minor technical difficulties that were resolved during the hearing.

After reviewing joint exhibits 1-A and 1-B (videotapes of the parole revocation proceedings), the trial court determined as a matter of law that the use of videoconferencing technology during the hearing sufficiently permitted Wilkins and his counsel to observe and confront the witnesses during the parole revocation hearing. The trial court noted that the videotape shows the witnesses' bodies, as well as the immediate area around the witnesses. The trial court was also able to ascertain that the witnesses were clearly visible and could be heard. We also conclude that the use of videoconferencing technology permitted free and unimpeded visual and auditory communication between the hearing officer, witnesses, Wilkins, and the respective counsel. Therefore, the use of videoconferencing technology for witness testimony during Wilkins's parole revocation hearing was functionally equivalent to live, in-person testimony.

>Although the positioning of the camera and monitor at SOCF may not have been ideal-*i.e.*, the camera was positioned slightly to the right of the monitor rather than being mounted directly on or above the monitor-we cannot conclude that this positioning denied Wilkins the right of confrontation in this parole revocation setting.
>
>We also agree with the trial court that Dr. Acker's report/affidavit does not create a material issue of fact barring summary judgment. A review of the videotape of the parole revocation hearing reveals that witnesses could be adequately seen and heard and that Wilkins's counsel could readily cross-examine the witnesses during the hearing. Dr. Acker's opinion that communicating by videoconferencing is less effective than communicating face-to-face does not create a material issue of fact with respect to whether due process requirements have been satisfied. That is primarily a question of law based upon facts that are undisputed.
>
>Because we have held that the use of videoconferencing technology during Wilkins's parole revocation hearing satisfied the Confrontation Clause, Wilkins's second assignment of error is overruled, and Wilkins's first assignment of error is moot. App.R. 12.
>
>Wilkins contends in his third assignment of error that the trial court erred in finding his admission to a variety of "technical parole violations obviated any problems with confrontation regarding the rape allegations at his parole revocation hearing." Although Wilkins denied that he committed a rape, he admitted facts establishing other parole violations. Wilkins conceded that (1) he failed to report to his parole officer; (2) he left the state without permission; (3) he had contact with a female under age 21; and (4) he rode in a vehicle with a female under age 21. Wilkins also concedes these parole violations on page 28 of his brief. ("His testimony included concessions that less serious charges were accurate.") Moreover, these admissions have nothing to do with the use of videoconferencing technology because Wilkins testified in the physical presence of the hearing officer during the parole revocation hearing.
>
>This court has previously held that minimum due process requirements are satisfied where the parolee admits the alleged parole violation at the revocation hearing. *Helton v. Ohio Adult Parole Auth.* (June 26, 2001), Franklin App. No. 00AP-1108, 2001 WL 709946. This principle was recognized in *Morrissey, supra,* 408 U.S. at 490, 92 S.Ct. 2593, 33 L.Ed.2d 484, wherein the United States Supreme

>Court stated that "[i]f it is determined that petitioners admitted parole violations to the Parole Board, as respondents contend, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter."
>
>Here, because Wilkins made admissions establishing four out of the six alleged parole violations, minimum due process requirements were satisfied-at least with respect to the admitted violations. Moreover, once a revocation hearing satisfies minimum due process requirements, the decision to deny parole is not subject to judicial review unless parole is revoked for a constitutionally impermissible reason. *Helton, supra*, citing *Mayrides v. Ohio Adult Parole Auth.* (Apr. 30, 1998), Franklin App. No. 97APE08-1035, 1998 WL 211923. Under R.C. 2967.15, the Ohio Adult Parole Authority is authorized to revoke parole when the parolee has violated the terms and conditions of his parole. *State ex rel. Nedea v. Capots* (1988), 40 Ohio St.3d 74, 75, 531 N.E.2d 707. Therefore, Wilkins's four parole violations were sufficient grounds for the revocation of his parole. Wilkins's third assignment of error is overruled.

*Wilkins v. Wilkinson, supra*, 157 Ohio App.3d at 214-16.

The decision of the state appellate court is presumed to be correct:

>(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
>(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall

10

> be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

> A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005).  Petitioner has failed to establish that the state appellate court's decision denying his claims is so unreasonable as to justify federal habeas corpus review.  *See Williams v. Taylor, supra*.

As discussed by the state appellate court, in *Morrissey v. Brewer, supra*, 408 U.S. at 480, the United States Supreme Court held that, while the "full panoply of rights due" a defendant in criminal trial proceedings do not apply in parole revocation hearings, the minimum requirements of due process do.  Such requirements include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id*., at 489. The Supreme Court stated:

> We emphasize there is no thought to equate [the parole revocation hearing] to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.
>
> \*\*\*
>
> We have no thought to create an inflexible structure for parole revocation procedures. The few basic requirements set out above, which are applicable to future revocations of parole, should not impose a great burden on any State's parole system. Control over the required proceedings by the hearing officers can assure that delaying tactics and other abuses sometimes present in the traditional adversary trial situation do not occur. Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime.

*Id.*, at 489-90.

Petitioner argues that the state appellate court's factual determination that "use of videoconferencing technology permitted free and unimpeded visual and auditory communication between the hearing officer, witnesses, Wilkins, and the respective counsel," and was "functionally equivalent to live, in-person testimony," *see Wilkins v. Wilkinson, supra*, was an unreasonable determination of the facts. In support of this allegation, petitioner refers to an affidavit from defense expert Dr. Stephen Acker, who stated that it was his opinion that the use of video teleconferencing in this case was an inadequate substitute for face-to-face confrontation. *See Affidavit of Stephen R. Acker*, Petitioner's Supplemental Exhibit O. Petitioner further argues that *Morrissey v. Brewer* mandated the physical presence of witnesses at his parole revocation hearing absent a prior

12

determination of good cause, which showing was not made in this case. *Traverse*, at 7-8.

This Court is not persuaded by petitioner's arguments. Petitioner has failed to rebut the presumption of correctness accorded the state courts' factual determinations. 28 U.S.C. 2254(e)(1). Review of the record reflects that the due process requirements of *Morrissey* were met.

In *Gagnon v. Scarpelli*, 411 U.S. 778, 788 (1973), the United States Supreme Court held that the due process requirements of *Morrissey v. Brewer* applied to probation revocation hearings, and in so doing, noted:

> An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses. Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the *Morrissey* requirements.

*Gagnon v. Scarpelli, supra,* 411 U.S. at 788 n.5.

Additionally, in *John v. U.S. Parole Com'n*, 122 F.3d 1278, 1284 (9th Cir. 1997), the United States Court of Appeals for the Ninth Circuit reversed the District Court's decision denying a habeas corpus petition, where the parolee was provided with no opportunity to confront adverse witness(es) at his revocation hearing without any finding of good cause. The Ninth Circuit stated, however, that the right to confront adverse witnesses at a revocation hearing did

> not necessarily include a right to the physical presence of [a].. rape victim. ... [T]he *Morrissey* right to confrontation is one that must be contoured to "the specific circumstances presented" (*United States v.*

13

> *Martin*, 984 F.2d 308, 311 (9th Cir.1993)) and ... the process due a parolee facing parole revocation is derived from "a process of balancing the [parolee's] right to confrontation against the Government's good cause for denying it" (*United States v. Simmons*, 812 F.2d 561, 564 (9th Cir.1987)). [FN4]
>
> \*\*\*
>
> ... [A]s suggested in *Gagnon,* 411 U.S. at 783 n. 5, 93 S.Ct. at 1760 n. 5 that balancing of appropriate factors is to be left to Commission in the first instance. But whatever path it chooses, Commission must provide ... [due] process minimally sufficient to assure that Commission's "exercise of discretion will be informed by an accurate knowledge of [John's] behavior" (*Morrissey,* 408 U.S. at 484, 92 S.Ct. at 2601).

*Id.*, at 1284-85.  Other courts to address the extent of confrontation required in revocation proceedings under *Morrissey* have similarly employed a balancing approach, weighing the parolee's right to confrontation against the rationale for denying it in view of the specific circumstances presented, and considering such variables as the importance of the evidence at issue, whether the parolee was given a meaningful opportunity to impeach or refute the evidence, the difficulty and expense of procuring witnesses to testify at the hearing, and other "traditional indicia of reliability" factors of the evidence at issue.  *United States v. Martin*, 984 F.2d 308, 311-313 (9th Cir. 1993), citing *United States v. Simmons,* 812 F.2d 561, 564 (9th Cir.1987)(other citations omitted); *see also United States v. Kindred,* 918 F.2d 485, 486 (5th Cir.1990); *United States v. Bell,* 785 F.2d 640, 642 (8th Cir.1986); *United States v. Penn,* 721 F.2d 762, 764 (11th Cir.1983)(rejecting Sixth Amendment challenges to admission of urinalysis results through testimony of a probation officer at a revocation hearing.)  The United States Court of Appeals for the Ninth Circuit has construed *Morrissey's* requirement of confrontation as follows:

> We construe that right as requiring that a supervised releasee receive a fair and meaningful opportunity to refute or impeach the evidence against him in order "to assure that the finding of a [supervised release] violation will be based on verified facts." *See Morrissey,* 408 U.S. at 484, 92 S.Ct. at 2601.

*United States v. Martin, supra*, 984 F.2d at 310.

The record reflects that petitioner was provided such an opportunity in this case. The fact that petitioner and his attorney were not in the same room with the alleged rape victim, or other witnesses who testified at the parole revocation hearing, did not deprive petitioner of the ability to contest or impeach such testimony so as to enable the parole board to make a determination "based on verified facts." *Morrissey, supra*, 408 U.S. at 484; *United States v. Martin, supra*, 984 F.2d at 312. Additionally, as noted by the respondent, petitioner did not dispute other allegations of parole violations against him. *Wilkins v. Wilkinson, supra*, 157 Ohio App.3d at 214-16.

For the foregoing reasons, and for the reasons discussed by the state appellate court, this Court concludes that petitioner has failed to establish that the state court's decision denying his claims was contrary to or an unreasonable application of federal law, or based upon an unreasonable determination of the facts. 28 U.S.C. 2254(d), (e); *Williams v. Taylor, supra*.

The Magistrate Judge therefore **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper

15

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

```
/s/ Terence P. Kemp
United States Magistrate Judge
```